```
FILED
MAR 26 2010
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CORY DEAN RUNGE,<br><br>    Plaintiff,<br><br>    v.<br><br>Mr. IPPOLLITO; A. SOTELLO; M. R. TURK; Mrs. BOCELLA; V. ORTEGA; E. GARCIA; J. W. DOVEY; M. S. EVANS; Mrs. WOLF; A. MAJOR; Dr. LEE; Mr. ARMSTRONG; R. JONES; C. R. SHARPS; Mr. CAITO; and JANE DOES 1-6,<br><br>    Defendants.<br>_____/ | No. C 06-5218 PJH (PR)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT AND STAYING CASE FOR REFERRAL TO MEDIATION** |

This is a civil rights case filed pro se by a state prisoner. Motions for summary judgment have been filed by the remaining defendants and plaintiff has opposed them. The movants have filed replies. For the reasons set out below, the motion will be granted in part and denied in part, and the case will be referred to Magistrate Judge Nandor Vadas to conduct settlement discussions.

## BACKGROUND

In his complaint plaintiff presented five claims. The court held that parts of each of the claims were sufficient to proceed, but dismissed with leave to amend as to several defendants. Plaintiff amended, dropping his claims against Dovey, Caito, Lee and Jones, and adequately pleading a claim against Evans. Service was ordered on defendants Ippollito, A. Sotello, M. R. Turk, Bocella, V. Ortega, E. Garcia, M. S. Evans, A. Major, Armstrong, Rincon, Calderas, and C. R. Sharps.

The defendants named in claims one, two and four moved to dismiss for failure to administratively exhaust. The motion was granted and claims one, two and four were dismissed for failure to exhaust. The remaining defendants (on claims three and five) were Evans, Major, Armstrong, Rincon and Calderas. The marshal was ordered to use established procedures to find an address at which defendants Correctional Officer Rincon and RN/Nurse D. Calderas could be served, and to serve them if an address were found. Rincon was served, but Calderas was not. The claims against her subsequently were dismissed without prejudice for failure to obtain service.

Plaintiff was granted permission to file what he labeled a Second Amended Complaint. The Second Amended Complaint was the same as the previous complaint, except (1) it contained a new claim six; and (2) in it plaintiff attempted to substitute Hegepeth, the current warden, for Evans, who was warden at the time of the events giving rise to the suit. In its screening order the court dismissed all claims against Hedgepeth and the claims against defendants Dovey, Lee, and R. Jones in claim six. The only remaining new claim was that against Sanchez in claim six. Service was ordered upon Sanchez. The court noted that because no change had been made in plaintiff's claims against the original defendants other than Evans, their motions for summary judgment remained submitted, that is, the motions had not been mooted by the Second Amended Complaint.

The omission of Evans from the Second Amended Complaint means that he no longer is a defendant. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir.1992) (defendants not named in an amended complaint are no longer defendants).

As a consequence of the screenings of the complaints and previous rulings, only three of plaintiff's claims remain in the case. One remaining claim is that defendants Major and Armstrong were deliberately indifferent to his serious dental needs. Another is that Rincon deliberately kicked a cell door, causing it to hit plaintiff on the forehead, and that he did this in retaliation for plaintiff's grievances and complaints. And the third is that defendant Sanchez, a nurse, was alerted to his severe dental pain and suffering by a health care services request form he filed, but did not do anything about his dental

problem. All other claims and defendants have been abandoned or dismissed.

## DISCUSSION

### I. Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.*

### II. Analysis

#### A. Motion for Summary Judgment by Defendants Major and Armstrong

Plaintiff contends that Major and Armstrong were deliberately indifferent to his serious dental needs. His claims involve problems with two separate teeth, tooth number five and tooth number eleven.

The following facts are undisputed: Plaintiff split one tooth in October of 2005 and broke another off below the gumline in November of 2005. On December 22, 2005, Runge asked for dental care on a health services request form. The request clearly refers to a need for treatment for two different teeth. On February 4, 2006, however, he approached defendant Armstrong, who was conducting yard triage for dental and medical emergencies, and told him about his dental problems. Armstrong concluded that plaintiff's dental needs

were not an emergency and took no further steps. Armstrong does not remember the specific occurrence, but says in his declaration that when conducting yard triage, upon determining that a dental problem is not an emergency he would have instructed the inmate to file a health care request or an administrative appeal.

On February 6, 2006, plaintiff filed a "Reasonable Modification or Accommodation Request" in which he complained about the lack of response to his December, 2005, health care request, and described the damage to both teeth – that one was split, and that one was broken off. On February 7, 2006, this filing was converted to an administrative appeal (grievance). That same day defendant Major, a dentist, saw plaintiff at a yard dental clinic and pulled his number five tooth. On February 8, 2006, plaintiff told his social worker that after removal of the tooth he felt much better. On February 23, 2006, plaintiff was seen for a post-operative check by defendant Major, who noted normal healing. On March 17, 2006, plaintiff refused to participate in an interview for the grievance he had filed on February 6, and the grievance was denied at the first level that day, citing his refusal to cooperate. On April 10, 2006, plaintiff appealed the denial to the second level.

On May 3, 2006, plaintiff was interviewed by defendant Major for the second-level response to his February 6 grievance. At the interview plaintiff complained about tooth number eleven, which was broken off below the gumline. Major told plaintiff to submit a health care request form. Over the next sixty days plaintiff submitted a number of health care request forms. On July 3, 2006, a dentist who is not a defendant here pulled tooth number eleven. On July 14, 2006, that dentist conducted a post-operative examination and noted that plaintiff was doing fine.

### 1.    Standard

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). This includes dental needs. *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989)

4

(dental care important medical need of inmates).

A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *Id.* at 1059.

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment. *Id.* at 1059-60.

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he or she "must also draw the inference." *Id.* If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).

    2.    **Dr. Major**

Defendant Major is the dentist who pulled plaintiff's number five tooth. Major says in his declaration that he "does not recall" plaintiff referring to any dental problem other than that with tooth number five at his February 7, 2006, visit, nor at his February 23, 2006, post-operative visit. Decl. Major ¶¶ 2-3. He says that prior to the May 3 visit he was unaware that tooth number eleven "was an issue for [plaintiff]." *Id.* at ¶ 6. He says that "prior to May 3, 2006, Runge did not make any complaints regarding [tooth number eleven]" *Id.* Major says that based on his extensive experience in the practice of dentistry, plaintiff's problem with tooth number eleven, though requiring treatment, was not an emergency and it was reasonable for him to receive treatment within sixty days. *Id.* at ¶ 7.

Major contends that because he did not learn of the problem with tooth number eleven until May 3, 2006, and the tooth was pulled on the sixtieth day after that, within what Major contends was a reasonable time for plaintiff's situation, he could not have been deliberately indifferent. He is wrong, however, because there is a genuine issue of material fact as to when he learned of the problem with tooth number eleven. Plaintiff says in his verified opposition to the motion for summary judgment that he told Major "face to face" that tooth number eleven also required treatment three times, on February 7, 2006, on February 23, 2006, and on May 3, 2006. Opp'n at 15. These are dates plaintiff was seen for care by Major. Furthermore, plaintiff's December 22, 2005, request for health care service, which clearly stated that he had *two* teeth that needed care, was signed by Major, the signature being dated February 7, 2006. Compl. Ex. E. This is sufficient to generate a genuine issue of material fact as to when Major learned of the tooth eleven problem; given that five months passed between the date Major signed plaintiff's health care request (February 7, 2006) and the date the tooth was pulled, July 3, 2006, and it was painful and bleeding the whole time, this issue of fact is material to whether Major was deliberately indifferent.

Major also contends that he is entitled to qualified immunity on this claim. However, a reasonable dentist in Major's position would not have believed it was reasonable for him to disregard a problem like plaintiff's with tooth number eleven for five months. He is not entitled to qualified immunity.

Major's motion for summary judgment will be denied.

### 3. Armstrong

Defendant Armstrong was the Medical Technical Assistant ("MTA") who saw plaintiff at the yard triage on February 4, 2006. Armstrong says in his declaration that he does not remember the specific interaction with plaintiff, but that at that time at yard triage it was his practice to observe whether the inmate was conscious and whether he had unobstructed breathing. Decl. Armstrong ¶ 2. If so, Armstrong would tell him that he was not eligible for emergency dental care, and tell him to file a health care request slip or an

1  administrative appeal to receive dental care. *Id.* at ¶ 3.

2      Plaintiff does not dispute that he was conscious and had unobstructed breathing, but adds that Armstrong told him that unless his condition was life-threatening he "would not see a dentist," and that when plaintiff told Armstrong how long he had been suffering and how much pain he was in, Armstrong said "it did not matter." Second Am. Compl. 5; Opp'n 3 (both verified). Plaintiff says that he told Armstrong how long he had been suffering. Second Am. Compl. 5.

    Armstrong points out that plaintiff was ineligible for emergency treatment under the standard in effect at the time, and that he did not have the power to schedule dental appointments for those whose problem was not an emergency, as if these points were dispositive of the matter. They are not, however. Because of the significant difference in definition of the two terms, it would be perfectly possible for a prisoner not to meet the standard for "emergency treatment" but still have a "serious medical need;" likewise, prison employees cannot ignore serious medical needs on grounds it is not their job to do anything. *See O'Rourke v. Hayes*, 378 F.3d 1201, 1210 n.5 (11th Cir. 2004) ("Since World War II, the 'just following orders' defense has not occupied a respected position in our jurisprudence, and officers in such cases may be held liable under § 1983 if there is a "'reason why any of them should question the validity of that order.'") (quoting *Brent v. Ashley*, 247 F.3d 1294, 1306 (11th Cir. 2001)); *c.f. California Attorneys for Criminal Justice v. Butts*, 195 F.3d 1039, 1049-50 (9th Cir. 2000) (denying qualified immunity to defendants who interrogated suspects in violation of *Miranda*, notwithstanding training material permitting such interrogations and Supreme Court opinions allowing the use of such interrogations for impeachment). The analysis of whether an employee was deliberately indifferent might be significantly affected by the employee's authority and responsibilities, but he or she still could be liable if deliberately indifferent.

    However, Armstrong did not ignore plaintiff's condition; he told plaintiff to file a health care request or an administrative appeal. When he told plaintiff this he knew that plaintiff had tolerated the condition for many months, because plaintiff told him so, and he

knew that plaintiff did not qualify for emergency dental care. That plaintiff had tolerated the condition for a long time made it unlikely he had a serious medical need for treatment immediately, and the step Armstrong took to deal with the dental need – telling plaintiff to follow proper procedures to obtain dental treatment – was reasonable. See Farmer v. Brennan, 511 U.S. 825, 837 (1994) (standard). It cannot be said on these facts that Armstrong was deliberately indifferent.

Alternately, Armstrong is entitled to qualified immunity. Even assuming that Armstrong was deliberately indifferent, a reasonable officer in his situation would not have realized that he was violating plaintiff's constitutional rights by telling him to follow procedures to obtain a dental appointment. See Saucier, 533 U.S. at 205 (if "the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense."), overruled on other grounds, Pearson v. Callahan, 129 S. Ct. 808, 818 (2009).

For the above reasons, Armstrong's motion for summary judgment will be granted.

### B. Motion to Dismiss or for Summary Judgment by Defendant Sanchez

Defendant Sanchez was added to the case in plaintiff's second amended complaint. He alleged that she reviewed a Health Care Services Request Form he filed on December 22, 2005, and failed to get care for him. Second Am. Compl. 16. He alleges that her review of the form was on December 28, 2005. Id. In her declaration, Sanchez says that she does not recognize the signature on the form by the person reviewing it on December 28, 2005, and that she was not working from December 20, 2005, until January 15, 2006. Decl. Sanchez ¶¶ 3, 4. There is no genuine issue of material fact as to these points, and in light of them, Sanchez is entitled to judgment as a matter of law. Her motion for summary judgment will be granted.

### C. Motion for Summary Judgment by Defendant Rincon

Plaintiff was bent down, almost touching his cell door, talking to the prisoner in the next cell, when Rincon came by unlocking the food tray slots in the cell doors. Plaintiff contends that Rincon kicked the cell door, which has about one inch of slack, causing it to hit him in the head. The impact caused a cut on plaintiff's forehead and set off a headache

that lasted a day and half.  Plaintiff contends that Rincon kicked the door deliberately, in retaliation for his having filed grievances and complaints, thus violating his Eighth and First Amendment rights.

In his motion for summary judgment Rincon presents several arguments:  (1) that plaintiff's injuries were de minimis; (2) that he did not act maliciously and sadistically; and (3) that his kicking the cell door was not retaliatory.

In arguing that plaintiff's injury was de minimis, Rincon conflates the physical injury requirement of 28 U.S.C. § 1997e(e) with what he contends is a physical injury requirement as an element of an excessive force claim.  As a result of the recent Supreme Court case of *Wilkins v. Gaddy*, 130 S.Ct. 1175 (Feb. 22, 2010), it is clear that excessive force claims do not require a more-than-de-minimis *injury*, as opposed to a more-than-de-minimis *use of force*, *id.* at ___.  Rincon's argument that the undisputed facts of plaintiff's injury bar his Eighth Amendment claim is without merit.

Section 1997e(e) does limit prisoner plaintiffs from recovering damages for mental or emotional injuries unless they also suffered a physical injury that is more than de minimis.  *See Oliver v. Keller*, 289 F.3d 623, 627-28 (9th Cir. 2002).  The qualifying injury need not be such that a nonprisoner would seek medical attention for it, however.  *Id.* at 628.

In *Oliver*, the plaintiff suffered aches and pains from sleeping on the floor of a temporary cell, pains he had characterized in a deposition as "nothing too serious," and a "painful canker sore" that was treated by the medical department.  *Id.* at 629.  The Ninth Circuit agreed with the district court that these injuries were de minimis.  *Id.*  Here, plaintiff suffered a cut in his forehead that bled for an hour or two but did not require medical treatment, and a headache that lasted one and a half days.  The court concludes that the injuries were de minimis and that plaintiff's claims for emotional and mental injuries are barred.  Section 1997e(e) does not bar claims for the nominal and punitive damages plaintiff demands, however, so this conclusion does not dispose of the entire claim.  *See id.* at 629-30.

9

1    When prisoners claim that their Eighth Amendment rights have been violated by the use of excessive force, as here, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). Rincon asserts that there is no substantial issue of material fact that in kicking the cell door he did not intend to hurt plaintiff, so could not have acted maliciously and sadistically to cause harm. This argument is premised on plaintiff's concession at his deposition that he did not think Rincon intended to hurt him, but "just wanted to scare" him. Rincon P&A, Ex. A [hereafter "Pl.'s Dep."] at 221. In his verified oppositions to Rincon's motion plaintiff says that he "never stated there was <u>no</u> intention by Def. Rincon to inflict an injury on me, I just stated I didn't want to believe he would be that sadistic, I was wrong, he wanted to cause me pain and injury . . . ." Opp'n 7.

Rincon has not supplied a declaration. The materials before the court contain no explanation whatever why Rincon kicked the door. Although Rincon contends in argument that he could not see plaintiff up against the door and thus did not know he was there when he kicked the door, plaintiff has supplied evidence, in his verified oppositions and in his deposition, that the windows in the door allowed Rincon to see plaintiff easily. *See, e.g., id.;* Pl.'s Dep. at 224. Plaintiff's consistent contention that Rincon laughed or smiled when he saw that plaintiff had been injured and was bleeding is evidence of malice. Opp's 7; Pl.'s Dep. at 224. There thus is a genuine issue of material fact whether Rincon acted sadistically and with malice. This ground for the motion for summary judgment is without merit.

Rincon's third contention is that there is no evidence that he acted in retaliation for plaintiff's having filed grievances and his complaints about his legal mail being delivered to him opened. Although plaintiff is correct that he alleges in his complaints that Rincon acted in retaliation, these assertions are conclusions, not factual allegations. The only evidence supporting plaintiff's retaliation contention is that when Rincon kicked the cell door plaintiff was telling his neighbor about having received a legal letter that had been opened outside

his presence. This is not sufficient to generate a genuine issue of material fact as to retaliation. Rincon's motion for summary judgment will be granted as to plaintiff's First Amendment retaliation claim.

In conclusion, Rincon's motion for summary judgment will be granted as to plaintiff's claim for compensatory damages for excessive force, leaving only nominal and punitive damages available on the excessive force claim, and his motion for summary judgment will be granted in its entirety on the First Amendment retaliation claim.

## CONCLUSION

1. The motions for summary judgment filed by defendant Armstrong (document 97 on the docket) and defendant Sanchez (document 132) are **GRANTED**.

2. The motion for summary judgment filed by defendant Major (document 97) is **DENIED**.

3. Defendant Rincon's motion for summary judgment (document 94) is **GRANTED** as to plaintiff claim for damages for excessive force and as to plaintiff's First Amendment retaliation claim. It is **DENIED** as to plaintiff's claim for nominal and punitive damages for excessive force.

4. The court has established a Pro Se Prisoner Mediation Program in which certain prisoner civil rights cases are referred to a neutral magistrate judge for mediation. This case is referred to Magistrate Judge Nandor Vadas for possible settlement pursuant to the Pro Se Prisoner Mediation Program. Magistrate Judge Vadas shall conduct mediation proceedings as he deems appropriate and file a report thereafter.

In view of the referral, further proceedings in this case are **STAYED** until such time as Judge Vadas reports that the case has been settled or cannot be settled. If the case is not settled, the court will enter a new scheduling order. The clerk shall mail a copy of the file, including this order, to Magistrate Judge Vadas in Eureka, California.

**IT IS SO ORDERED.**

Dated: March 26, 2010.

PHYLLIS J. HAMILTON
United States District Judge

P:\PRO-SE\PJH\CR.06\RUNGE218.MSJ.wpd